IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NANCY FROST,<br>    Plaintiff,<br><br>    v.<br><br>CITIMORTGAGE, INC.,<br>    Defendant. | )<br>)   1:10-cv-1003<br>)<br>)<br>)<br>)<br>)<br>)   JURY DEMANDED<br>) |

## COMPLAINT

1.  Nancy Frost brings this action to secure redress for CitiMortgage, Inc.'s ("Citi") violation of the Real Estate Settlement Procedures Act, 12 U.S.C. §2605 et seq. ("RESPA") Citi is and was plaintiff's residential mortgage loan servicer, and did not timely respond to plaintiff's Qualified Written Request regarding a loan modification within the time period required in the statute. In fact, it took Citi until January 21, 2010 to respond to plaintiff's May 6, 2009 request. Plaintiff has been damaged as a result of Citi's non-compliance.

## JURISDICTION

2.  This Court has federal question jurisdiction over the RESPA claims, and supplemental jurisdiction over the Illinois Consumer Fraud Act claims.

3.  Venue is appropriate because the property that is the subject of this lawsuit is located in this District.

## PARTIES

4.  Plaintiff is an individual who resides in this District.

1

5.       CitiMortgage, Inc. is the mortgage servicer for plaintiff's residential mortgage.  Its registered agent is CT Corp. 208 S.LaSalle St., Suite 814, Chicago, IL 60604.

**FACTS**

6.       On or around May 6, 2009, plaintiff anticipated the likelihood of becoming late on her mortgage.  She had been unemployed for some time, and applied as part of her planning for "the worst."

7.       Plaintiff filled out an internet application for a mortgage modification, which at that time was known as a "hardship."  Plaintiff called to follow up that same day to follow up, and was told that she should fax Citi proof of income from the past few months.  Plaintiff faxed four pages of her unemployment benefit summary for the past few months.  Plaintiff wrote a short note to Citi on one page stating the reason for the fax, "App for Hardship", and included her loan number on every page.

8.       Upon information and belief, Citi received the fax and the rest of the application for hardship.

9.       Upon information and belief, Citi understood that the fax and application pertained to plaintiff and plaintiff's loan.

10.      Upon information and belief, Citi understood that plaintiff submitted the materials because she wanted information concerning a loan modification, wanted an appraisal done, and wanted to be considered for a loan modification.  Plaintiff expected a package of information and forms to fill out from Citi in response to this communication.

11. This request for a loan modification is integrally related to the servicing of plaintiff's loan. Pursuant to information on Citi's website soliciting such, plaintiff reasonably expected that her servicer would respond to this request for information and for assistance.

12. After the initial faxing of the materials, plaintiff called Citi numerous times to follow up on the request for information and assistance.

13. Citi told plaintiff that she kept "falling through the cracks." Citi repeatedly told plainiff that they were sending an appraiser to determine the value of the home, but did not send an appraiser. Citi told plaintiff another time that, somehow, her file was mistakenly "placed at the bottom of the file" for mortgage modifications, and that she would have to wait longer.

14. In around August, 10, 2009, plaintiff spoke with someone at Citi named Joe, ID # 17615, who said that the appraisal went through. Joe set plaintiff up with a modification whereby plaintiff was supposed to pay less than the amount according to her mortgage.

15. Under Joe's plan, plaintiff's payments were due on the 13th of each month, and were lowered from approximately $1,048 to $501.06, effective immediately.

16. Joe also told plaintiff that she would have to send several documents. This includes more proof of unemployment income, along with proof of taxes and 3 month's worth of bank statements. Joe said he did not remember everything reaquired, but that he would mail plaintiff a package that explained, specifically, everything Citi servicing needed.

17. Plaintiff did her first payment of $501.06 over the telephone with Citi on August 10, 2009. Plaintiff made her subsequent payments, too.

Case 1:10-cv-01003   Document 1   Filed 02/15/10   Page 4 of 7

18. Nevertheless, plaintiff began receiving multiple telephone calls from Citi per day, attempting to collect the remainder of what Citi's collection department thought was due.

19. Plaintiff spoke with Citi representatives, during some of these telephone calls. During one or more calls, the collections department transferred plaintiff to the modification department, which told plaintiff that the "right hand doesn't know what the left hand is doing."

20. Some of the collections representatives became abusive with plaintiff. All of the collections people who called demanded the incorrect amount due, according to trial modification.

21. According certain Citi representatives on the telephone in or around October 2009, "Joe" did not "push the button" on the modification to make it official; the phone calls stopped in about November 2009.

22. Citi even hired a representative to visit plaintiff's home personally to deliver a collection notice.

23. When someone at Citi pushed the button, Citi believed that plaintiff was already four or five months late. Plaintiff was not late, she had been paying on time according to the modification.

24. Eventually, Citi told plaintiff that plaintiff was placed into the mortgage modification program. Plaintiff received these materials her May 6, 2009, letter requested on January 22, 2010.

## COUNT I - RESPA

25. Plaintiff incorporates all previous paragraphs.

26. RESPA, 12 U.S.C. §2605(e) requires a mortgage servicer to respond to mortgagee's "Qualified Written Requests" ("QWRs")  See also 24 C.F.R. § 3500.21(e).

27. A document is a QWR if it:

For purposes of this subsection, a qualified written request shall be a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that—

(i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and

(ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.

28. Plaintiff's communications with Citi, both her internet submission and her May 5, 2009, fax, were QWRs under RESPA.  They both provided Citi with information that enabled Citi to identify the name and the account number, and they both provided Citi sufficient detail regarding other information sought by plaintiff.  To wit:  information concerning the loan modification.

29. Plaintiff never received a notice from Citi acknowledging her QWR, pursuant to 12 U.S.C. §2605(e)(1)(A).

30. Plaintiff never received an adequate written response pursuant to 12 U.S.C. §2605(e)(1).

31. Upon information and belief, Citi did not forgo credit reporting on plaintiff's loan while it considered her QWR.

32. Plaintiff has been damaged by Citi's failure to timely respond to her QWR.  She has suffered extreme emotional distress, frustration and embarrassment.

WHEREFORE, plaintiff asks that this Court enter judgment in her favor and against CitiMortgage, Inc. for:

a. Statutory and actual damages;

b. Attorney's fees and costs of suit;

c. Any other relief the Court deems fit.

### COUNT II - Illinois Consumer Fraud Act

33. Plaintiff incorporates all previous paragraphs.

34. It was an unfair act within the meaning of the Illinois Consumer Fraud Act for Citi to have strung plaintiff along for seven months with regard to a potential mortgage modification.

35. It was an unfair and deceptive act under the ICFA for Citi to have its collections department harass plaintiff when plaintiff was in good faith paying the amount that a representative from another department told her to pay.

36. It was unfair under the ICFA for Citi not to have mailed plaintiff any documents between May 2009 and January 2010 relating to the mortgage modification that it admittedly knew plaintiff had applied for, and was qualified for.

37. Plaintiff has been damaged by the above violations.

WHEREFORE, plaintiff asks that this Court enter judgment in her favor and against CitiMortgage, Inc. for:

a. Actual and punitive damages;

b. Attorney's fees and costs of suit;

c. Any other relief the Court deems fit.

        Respectfully submitted,

        <u>Alexander H. Burke</u>

**BURKE LAW OFFICES, LLC**
155 N. Michigan Ave., Suite 9020
Chicago, IL 60601
(312) 729-5288
(312) 729-5289 (fax)
ABurke@BurkeLawLLC.com
www.BurkeLawLLC.com

## **JURY DEMAND**

    Plaintiff demands trial by jury.

        /s/Alexander H. Burke

Alexander H. Burke
**BURKE LAW OFFICES, LLC**
155 N. Michigan Ave., Suite 9020
Chicago, IL 60601
(312) 729-5288
(312) 729-5289 (fax)
ABurke@BurkeLawLLC.com

## **DOCUMENT PRESERVATION DEMAND**

    Plaintiff hereby demands that the defendant take affirmative steps to preserve all recordings, data, documents and all other tangible things that relate to plaintiff and any other consumer who may have similar claims, the events described herein, any telephone call, campaign, account, sale or file associated with plaintiff and any account or number or symbol relating to any of them.  Plaintiff further demands that defendant obtain agreement from any third party to do the same -- if any third party refuses, you are directed to notify the undersigned immediately so that measures may be taken to avoid spoliation of any relevant or discoverable materials or information.  These materials are very likely relevant to the litigation of this claim.  This demand shall not narrow the scope of any independent document preservation duties of the defendant.

        /s/Alexander H. Burke